IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETH OUELLETTE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-1417 |
| | : | |
| DIRECT SAT USA LLC | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **October 19, 2022**

     Plaintiff Beth Ouellete brings this employment discrimination action against Defendant Direct Sat USA LLC ("Direct Sat"), alleging violations of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act ("PHRA"). Direct Sat moved to dismiss Ouellette's first Complaint, to which she responded by filing an Amended Complaint. Direct Sat again moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Ouellette alleges sufficient facts to plausibly infer discrimination and retaliation under both the ADA and the PHRA, Direct Sat's motion will be denied.

**FACTS**

     In February 2016, Ouellette was hired as a dispatch specialist for Direct Sat, a subsidiary of UniTek Global Services. Am. Compl. ¶¶ 2, 12, ECF No. 6. Her job duties included "receiving calls, monitoring and entering information into logs, keeping records, addressing problems, and dispatching appropriate team members." *Id*. ¶ 37. For over two years, she was employed by Direct Sat without incident or complaint. *Id*. ¶ 12.

     Ouellette suffers from bilateral arthritis of the hands, which limited her ability to type, use the phone, and concentrate. *Id*. ¶ 36. She had surgery to address her ailment on June 9, 2020. *Id*. ¶¶ 13, 34. At this time, she was approved for a twelve-week medical leave under the Family and

1

Medical Leave Act ("FMLA"). *Id.* ¶ 14. After this leave was exhausted on August 31, 2020, Ouellette applied for and was granted an additional 30-day personal leave of absence from Direct Sat. *Id.* ¶ 15. She returned to work on October 1, 2020.[1] *Id.*

At a follow up appointment on October 19, 2020, Ouellette's doctor identified complications from her June surgery and recommended her medical leave be extended to November 30, 2020. *Id.* ¶ 16. This recommendation was made to accommodate an additional surgery to remove a broken screw, scheduled for October 27, 2020. *Id.* ¶ 19. On October 19, Ouellette called her manager at Direct Sat to advise her about this new medical leave request. *Id.* ¶ 18. She then called UniTek Human Resources to inform the company about her newly scheduled surgery and need for additional leave. *Id.* ¶ 20. During both calls, Ouellette was informed that UniTek had sold Direct Sat. *Id.* "Nicole," an employee of UniTek Human Resources, told Ouellette her leave could not be extended because her employment had ended as a result of the sale. *Id.* ¶ 22. On the next day, October 20, 2020, Human Resources sent Ouellette a letter stating that she had exhausted her benefits and would be terminated from employment. *Id.* ¶ 25.

On February 8, 2021, Ouellette filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 28. The EEOC issued a "Notice of Right to Sue" on January 27, 2022. Am. Compl. Exhibit A, ECF No. 6-1.

In the instant suit, Ouellette charges Direct Sat with violations of the ADA and the PHRA.[2] In Count I, an ADA discrimination claim, Ouellette alleges she is a qualified employee within the

---

[1] From the pleadings and briefs, it is unclear what occurred between the expiration of Ouellette's 30-day personal leave on September 30 and her doctor's appointment on October 19. Drawing all reasonable inferences in favor of the plaintiff, however, the Court assumes Ouellette returned to work. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

[2] Although the Amended Complaint mentions a violation of Title VII, it includes no claims related to this cause of action. *See* Am. Compl. ¶ 7.

meaning of the ADA, she requested a reasonable accommodation for her disability, and Direct Sat failed to engage in the "interactive process" as required by the ADA. Am. Compl. ¶¶ 31, 43, ECF No. 6. In Count II, an ADA retaliation claim, Ouellette alleges Direct Sat terminated her employment because of her request for accommodations. *Id*. ¶ 67. Finally, in Count III Ouellette claims Direct Sat's alleged retaliation violates the PHRA as well. *Id*. ¶ 70.

Direct Sat now moves to dismiss pursuant to Rule 12(b)(6).

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

Direct Sat argues Ouellette has failed to state a claim for discrimination under the ADA, or for retaliation under either the ADA or the PHRA. This Court finds Ouellette has alleged sufficient facts to infer both discrimination and retaliation on the basis of her disability. Direct Sat's Motion

to Dismiss will be denied.

Count I of the Amended Complaint alleges discrimination under the ADA. To plead this claim, a plaintiff must allege: "(1) that [she] is disabled within the meaning of the ADA, (2) that [she] is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [she] was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). Direct Sat attacks the second element of this claim, arguing Ouellette fails to plead facts showing she is a qualified individual under the ADA. It argues Ouellette is not qualified because (1) her requested accommodation was not reasonable; (2) she was unable to perform the essential functions of the job; and (3) there was no breakdown of the required interactive process.

The Third Circuit defines a "qualified individual" as one who (1) "satisfies the requisite skill, experience, education and other job-related requirements of the employment position," and (2) "can perform the essential functions of the position," with or without reasonable accommodation. *Dean v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 1998) (citing 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m)). Direct Sat contends the Amended Complaint fails to plead sufficient facts as to the second factor of this test. Neither party argues Ouellette could have performed the essential functions of the dispatcher role without accommodation; rather, the dispute centers on whether her requested accommodation, additional medical leave, was reasonable.

Examples of "reasonable accommodations" under the ADA include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, [and] acquisition or modification of equipment or devices." 42 U.S.C. § 12111(9). In some instances, a leave of absence may be a reasonable accommodation. *Garner v. Sch. Dist. of Phila.*, 63 F. Supp. 3d 483, 492 (E.D. Pa. 2014). Leave for an indefinite duration, however, is not reasonable. *Fogleman v.*

*Greater Hazleton Health Alliance*, 122 F. App'x 581, 586 (3d Cir. 2004) (holding interminable leave is "inherently unreasonable, particularly where there is no favorable prognosis"). A request for medical leave may be granted as a reasonable accommodation only if the amount of time requested would "enable the employee to perform his essential job functions in the near future." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004). The request for accommodation Ouellette made on October 19, 2020—additional leave through November 30, 2020—was not inherently unreasonable, as it included a definite end date. Am. Compl. ¶ 16, ECF No. 6. This defined period of leave could enable her to perform her duties "in the near future." *Conoshenti*, 364 F.3d at 151.

Direct Sat also argues that, regardless of the reasonableness of the requested accommodation, Ouellette was not a qualified individual because her request for leave on October 19 indicates she could not perform the essential tasks of her position at the time of her discharge on October 20. Def.'s Mem. Sup. Mot. Dismiss 8, ECF No. 8-2. It is true that "[t]he determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit." *Gaul v. Lucent Tech.,* 134 F.3d 576, 580 (3d Cir. 1998). Additional leave, however, is a requested accommodation that cannot be evidence of an inability to perform a job's functions with accommodations. *See Gibson v. Lafayette Manor, Inc.*, No. 05-1082, 2007 WL 951473, at *7 (W.D. Pa. Mar. 27, 2007) (describing this argument as "put[ting] the proverbial cart before the horse").

In a remarkably similar situation in *Bernhard v. Brown & Brown of Lehigh Valley Inc.*, 720 F. Supp. 2d 694 (E.D. Pa. 2010), the employer alleged that, because the employee requested leave from work, he was not considered a qualified employee at that time. *Id.* at 701. The Court admonished the employer: "It would be entirely against the import of the ADA if Mr. Bernhard

were not considered qualified because he was not able to perform his essential job functions during his leave, as leave itself was the accommodation requested by Mr. Bernhard." *Id*. Direct Sat cannot use Ouellette's request for leave as evidence of an inability to perform the essential functions of her position. Instead, this medical leave is a reasonable accommodation that would plausibly allow Ouellette to perform her duties, rendering her a qualified employee under the ADA.

Along with arguing Ouellette's requested accommodation was unreasonable, Direct Sat claims Count I should be dismissed because there is insufficient evidence to plausibly show a lack of good faith on its part in attempting to support Ouellette. Def.'s Mem. Sup. Mot. Dismiss 15, ECF No. 8-2. "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of the accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). A plaintiff can prove a violation of this interactive process by showing: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999). Generally, the interactive process requires an employee to first put the employer on notice of her disability and requested accommodation, and then the employer to confer with the employee to find possible options. *Id*. at 320.

While Direct Sat correctly notes "the unassailable fact that [Ouellette] was twice approved for leave," evidence of prior support for other accommodations does not prove good faith in the current instance. Def.'s Mem. Sup. Mot. Dismiss 15, ECF No. 8-2. It is the request for leave of

October 19, 2020, that is at issue here. As to this request, Ouellette alleges sufficient facts to plausibly infer a breakdown of the interactive process. She shared "the specific nature" and duration of her disability with QualTek Human Resources on October 19, and requested the accommodation of medical leave through November 30. Am. Compl. ¶ 38, ECF No. 6. This communication triggered the employer's responsibility to inquire further as to Ouellette's limitations and investigate possible supports. *See Taylor*, 184 F.3d at 320. Though Direct Sat found Ouellette's request for additional leave to be unreasonable, it had a responsibility to counter with a request for additional information. *Armstrong v. Burdette Tomlin Memorial Hosp.*, 438 F.3d 240, 247 (3d Cir. 2006) (placing the burden of further inquiry on the employer). An employer cannot simply reject a proposed accommodation and take no further action. *Id*. Ouellette thus plausibly alleges a failure on the part of Direct Sat to engage in the interactive process. The Amended Complaint also includes sufficient facts to infer Ouellette was a qualified individual as understood by the ADA, and that her requested accommodation was reasonable and would have enabled her to perform the essential functions of her job in the near future. For these reasons, Direct Sat's Motion to Dismiss Count I will be denied.

Count II of the Amended Complaint claims Direct Sat retaliated against Ouellette by terminating her employment, in contravention of the ADA's mandate that "[n]o person shall discriminate against any individual because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). To make out a claim for retaliation, a plaintiff must prove "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002).

7

Direct Sat argues Ouellette's Amended Complaint fails to allege facts supporting the causation requirement of a retaliation claim. Def.'s Mem. Sup. Mot. Dismiss 17, ECF No. 8-2. Causation may be proven in one of three ways:

> (1) in certain narrow circumstances, by the timing of the adverse reaction vis-à-vis the protected activity; (2) by a pattern of animus during the interval between the protected activity and the adverse action; or (3) by other circumstantial evidence concerning the employer's motivation, including inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees.

*Theriault v. Dollar Gen.*, 336 F. App'x 172, 175 (3d Cir. 2009). Both parties agree that Ouellette's claim mainly relies on the first method of proving causation: timing of events.

While timing by itself is rarely sufficient to prove a causal link, it can support an inference of causation if it is "unusually suggestive." *Motto v. Wal-Mart Stores East, LP*, 563 F. App'x 160, 164 (3d Cir. 2014). Ouellette alleges she exercised her rights under the ADA by requesting an accommodation—a protected activity—on October 19, and was informed of her discharge on October 20. Am. Compl. ¶ 57, ECF No. 6. This timing is certainly "unusually suggestive." *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding a causal link where "discharged followed rapidly, only two days later," after the protected activity). Further, Ouellette alleges Direct Sat explicitly told her she had exhausted her disability benefits in its October 2020 letter. *Id*. ¶ 25. This reference to her accommodation request, in conjunction with the suggestive timing and the absence of any adverse performance issues, is sufficient to allege a causal link between the protected activity and the adverse employment action, pushing the needle from possible to

plausible.³ *Twombly*, 550 U.S. 570. Direct Sat's Motion to Dismiss Count II will be denied.

Ouellette's final claim alleges retaliation under the PHRA. Courts "generally interpret the PHRA in accord with its federal counterparts." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002). The elements of a PHRA retaliation claim mirror those of the ADA. *See id*. As Ouellette alleges sufficient facts to state a claim for ADA retaliation, the same is true for her PHRA claim. Direct Sat's Motion to Dismiss Count III will also be denied.

For the reasons stated above, Direct Sat's Motion to Dismiss the Amended Complaint will be denied in full.

An appropriate Order follows.

BY THE COURT:

　/s/  Juan R. Sánchez
Juan R. Sánchez, C.J.

---

³ While it is unclear how the sale of Direct Sat played into this chain of events, at this stage in proceedings the Amended Complaint alleges sufficient facts to plausibly infer Ouellette's discharge was caused by her exercise of rights under the ADA.